# EXHIBIT A

# COMPLAINT

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

4847-3092-1415.1

Electronically Filed
8/17/2020 1:09 PM
Steven D. Grierson
CLERK OF THE COURT

**KENNEDY & COUVILLIER, PLLC**
Todd E. Kennedy, Esq. (Bar #6014)
Maximiliano D. Couvillier III, Esq. (Bar #7661)
3271 E. Warm Springs Rd.
Las Vegas, NV 89120
Tel: (702) 605-3440
Fax: (702) 625-6367
tkennedy@kclawnv.com
mcouvillier@kclawnv.com

A. William Maupin, Esq. (Bar #1315)
13345 Goldpan Dr., Suite 112
Reno, NV 89511
Tel: (702) 682-5476
raisuli1@aol.com

*Attorneys for Plaintiffs*

CASE NO: A-20-819684-C
Department 23

## DISTRICT COURT

## CLARK COUNT NEVADA

| | |
|---|---|
| WFTLV01, LLC, a Nevada limited liability company; WFTLV02, LLC, a Nevada limited liability company; WFTLV03, LLC, a Nevada limited liability company; WFTLV04, LLC, a Nevada limited liability company; and WFTLV05, LLC, a Nevada limited liability company,<br><br>Plaintiffs<br><br>v.<br><br>AMTRUST NORTH AMERICA, INC., a Delaware corporation; SECURITY NATIONAL INSURANCE COMPANY, a Delaware corporation.<br><br>Defendants. | **COMPLAINT** |

Plaintiffs WFTLV01, LLC; WFTLV02, LLC; WFTLV03, LLC; WFTLV04, LLC; and WFTLV05, LLC complain against defendant AmTrust North America, Inc. as follows:

Page 1 of 19

Case Number: A-20-819684-C

## INTRODUCTION

This is an action for breach of contract and bad faith denial of insurance coverage for, among other things, business interruption, loss of use of premises, continued physical access restrictions. Plaintiff paid defendants tens of thousands in premiums for precisely the insurance coverage they wrongfully and in bad faith denied when plaintiff needed such coverage.

## PARTIES

1. Plaintiff WFTLV01, LLC ("Wahoo's Las Vegas") is a Nevada limited liability, which operates, and operates through affiliates - plaintiffs WFTLV02, LLC; WFTLV03, LLC; WFTLV04, LLC; and WFTLV05, LLC - five *Wahoo's Fish Taco* franchise restaurants in Clark County, located at: (i) 7020 West Sunset; (ii)1000 S Rampart, Ste. 21 [Boca Park]; (iii) 76 W Horizon Ridge Pkwy, Ste. C100 A & B; (iv) 7930 W Tropical Pkwy, Ste. 110; and (v) 3883 W Flamingo Rd.

2. Wahoo's Las Vegas also has a Nevada gaming license and operates gaming and full service bars in all of its five *Wahoo's Fish Taco* restaurants.

3. Wahoo's Las Vegas is the archetypical local "mom and pop" small business. Wahoo's Las Vegas is principally managed by husband and wife, Matt and Shelley Flandermeyer, who invested their life-savings into Wahoo's Las Vegas, with hopes that such new endeavor would help fund their retirement and children's futures. Shelley is a former elementary school teacher and Matt is a former executive in the restaurant and hospitality business.

4. The Flandermeyers infused Wahoo's Las Vegas with their personal virtues of community and goodwill and, since its inception, Wahoo's Las Vegas has been a generous Clark County community partner, generously donating their time, thousands of dollars, food and other in-kind donations to local schools and charities, including: Boys & Girls Club of Henderson; Safe House; Opportunity Village; Juvenile Diabetes Research Foundation; Foothills High School; Central Christian Church; Faith Lutheran Middle School & High School; UNLV; Junior Golden Knights; Boulder City Adult Intramurals; and SLAM Academy Las Vegas (which

provides support and mentoring to Clark County students).

5. To protect the business and life-savings investment in the company, Wahoo's Las Vegas purchased commercial insurance policies from defendant AmTrust North America, Inc. ("AmTrust"), which was carried by defendant Security National Insurance Company ("SN Insurance")(AmTrust and SN Insurance sometimes "Defendants").

6. AmTrust is a Delaware corporation that is registered to do business in Nevada with the Nevada Secretary of State and is doing business in Clark County, Nevada.

7. AmTrust is considerable insurance company, which touts itself as being specifically founded to serve small businesses.

8. According to AmTrust, it is a profitable insurance company, with "A-" rating from A.M. Best, and represents in its web page (www.amtrustfinancial.com) that it is "well positioned to provide coverage for those in need of a strong, agile partner."

9. The profits that AmTrust derives from insurance premiums are considerable and growing, and AmTrust was recently named to the Fortune 500 list, which is generally recognized as the "ultimately business scorecard," and the 500 members that make of the list represent the top of the U.S. economy.

10. On information and belief, AmTrust operates under a holding company system. Among other things, AmTrust insurance coverages are provided by its affiliated and subsidiary insurance companies, including defendant SN Insurance.

11. SN Insurance, an affiliate and subsidiary of AmTrust, is a Delaware corporation and is licensed by the Nevada Department of Insurance.

12. SN Insurance is the carrier of the AmTrust for the insurance policies at issue here.

**WAHOO'S LAS VEGAS PURCHASED EXTEND "ALL RISK" BUSINESS INTERRUPTION COVERAGE FROM AMTRUST**

13. Specifically, Wahoo's Las Vegas purchased Commercial Insurance Policy No. SPP1110978 02 ("Policy") from Defendants, which covered all five restaurant locations operated by the Plaintiffs.

14. Among other things, Wahoo's Las Vegas paid additional, considerable, premiums to Defendants for expanded coverage endorsements.

15. Wahoo's Las Vegas also purchased from Defendants an Umbrella Policy No. SMB1113427 02 ("Umbrella") that Defendants offered for additional, expanded coverages, which covered all five restaurant locations operated by Plaintiffs.

16. The Policy is generally characterized as an "all risk policy," which means that the Policy covers all risks unless they are specifically excluded.

17. The losses at issue here, for which Wahoo's Las Vegas made a claim to Defendants, and Defendants denied in breach of contract and in bad faith, were and are covered by the Policy.

18. The insurance premiums that Wahoo's Las Vegas paid, and continues to pay for, are very expensive; the most recent annual primum that Wahoo's Las Vegas paid for the Policy was $39,868.00, and Wahoo's paid an additional $3,732.00 for the Umbrella.

19. The Policy expressly provides several independent, alternatives for insurance coverage.

20. Thus, one independent basis for coverage under the Policy is generally known as business interruption or *Business Income* coverage, which protects Wahoo's Las Vegas against loss of business from a suspension of each restaurants' operations due to loss of use of, or damage to, the restaurant premises

21. Another independent, alternative basis for coverage under the Policy is under *Extended Business Income Coverage*, which provides additional business interruption or business income coverage. with express endorsements liberalizing and expanding coverage and eliminating other otherwise excluded causes of loss.

22. Another independent, alternative basis for coverage under the Policy is under *Civil Authority* coverage, which protects Wahoo's Las Vegas against loss due to an action by Civil Authority which prohibits access to the restaurants.

23. The Defendants failed to investigate and consider all coverages available to

Wahoo's Las Vegas, yet it is up to insurance companies, like Defendants, to fully investigate and consider all available coverages when their insureds, like Wahoo's Las Vegas, make insurance claims.

24. As alleged herein, Defendants not only failed to make such investigation and failed to consider all available coverages when Wahoo's Las Vegas made its insurance claim after it suffered insured losses but actively misrepresented available coverages and thus waived any right to now claim new or additional grounds to deny coverage, as specifically alleged herein.

25. Such responsibilities and duties to fully investigate claims, accurately and fully consider all coverages and fairly fully and equally consider the interests of its insureds fall on insurance companies like Defendants because, among other things, insurance policies (like the Policy and Umbrella here) are known as "contracts of adhesion," because they are prepared solely by the insurance companies and the insured (like Wahoo's Las Vegas) do not participate in drafting the policies or negotiating any of the terms. Insurance policies, when ambiguous, shall be construed against the insurer and all exclusions or limitations, strictly construed against the insurer.

## WAHOO'S LAS VEGAS SUFFERED EXPRESSLY COVERED AND NON-EXCLUDED RISKS

26. On March 12, 2020, Nevada Governor Steve Sisolak ("Governor Sisolak") declared a State of Emergency ("3/12/20 Emergency Declaration") in the state of Nevada arising from COVID-19 circumstances, acknowledging that property of Nevadans (like Wahoo's Las Vegas) would be impacted by such declaration.

27. On March 18, 2020, pursuant to his 3/12/20 Emergency Declaration, Governor Sisolak executed Emergency Directive 002 ("3/18/20 Emergency Directive 002") memorializing his order mandating all gaming operations in the state to close and cease business by 11:59 p.m. on March 17, 2020.

28. On March 20, 2020, Governor Sisolak issued Declaration of Emergency Directive

003 and related regulations ("3/20/20 Emergency Directive No. 003"), which ordered the closure of bar operations, and further prohibited direct physical use of, and onsite access to, restaurants and businesses like the *Wahoo's Fish Tacos* restaurants operated by Wahoo's Las Vegas.

29. The COVID-19 circumstances further caused actual, physical damage to all *Wahoo's Fish Tacos* restaurants operated by Wahoo's Las Vegas, and to the surrounding properties within one (1) mile of each of those restaurants.

30. Section 11 of the 3/20/20 Emergency Directive 003 provides that the Directive lasts until at least April 16, 2020.

31. As a direct result of these circumstances and acknowledged damage to and loss of use of property, Wahoo's Las Vegas closed all of its five restaurants on March 17, 2020.

32. The Nevada Department of Public Safety, Division of Emergency Management acknowledged or presumed physical damage to Nevada businesses and restaurants including, among other things, the *Wahoo's Fish Tacos* restaurants operated by Wahoo's Las Vegas, by issuing Emergency Regulation on March 20, 2020 ("3/20/20 Emergency Regulation") prohibiting the public from going inside such restaurants and prohibiting such restaurants from conducting or carrying out their businesses inside their properties.

33. The 3/20/20 Emergency Regulation also acknowledged or presumed physical damage to Nevada business properties, including those within one (1) mile of the *Wahoo's Fish Tacos* restaurants operated by Wahoo's Las Vegas, by prohibiting the public from going inside the properties of such businesses and prohibiting such businesses from transacting business inside their properties or altogether.

34. On March 29, 2020, Governor Sisolak issued a Declaration of Emergency Directive 008 ("3/29/20 Emergency Directive No. 008") which, among other things, recognized the resulting "adverse economic conditions… negatively impacting the financial stability of … businesses" resulting from business closures and loss of use of business properties.

35. On March 31, 2020, Governor Sisolak issued a Declaration of Emergency Directive 010 ("3/31/30 Emergency Directive No. 010"), Stay at Home Order, which further

restricted and/or prohibited patrons and customers of Wahoo's Las Vegas from entering or accessing any of the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas. 3/31/10 Emergency Directive 010 further extended the Declaration of Emergency Directive 003 to April 30, 2020.

36. On March 31, 2020, Governor Sisolak further made a Request for Presidential Disaster Declaration to President Donald Trump. Among other things, Governor Sisolak's Request expresses the considerable damage inflicted on small businesses, like Wahoo's Las Vegas and, in fact, states that "Small businesses and their employees are suffering disproportionately" due to the closure and loss of use of their properties.

37. On April 23, 2020, the Nevada Occupational Safety & Health Administration ("NV OSHA") issued certain mandates ("4/23/20 NV OSHA Mandates") which recognize or presuppose physical damage to property to businesses, including the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas and businesses within one (1) mile of those restaurants.

38. Thus, among other things, the 4/23/20 NV OSHA Mandates presuppose physical damage and require business properties, like those of Wahoo's Las Vegas, to engage in periodic remediation of its covered premises; which remediation measures would not be necessary in the absence of physical damage.

39. On May 7, 2020, Governor Sisolak issued Declaration of Emergency Directive 018 ("5/7/20 Directive 018"), which recognizes the physical damage to property to businesses, including the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas and also recognizes physical damage to businesses within one (1) mile of those restaurants, and requires certain remediation measures as a result of such damage, and continues to mandate closures of properties within one (1) mile of *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas.

40. On May 7, 2020, Governor Sisolak also issued *Phase One Roadmap to Recovery for Nevada Plan* ("NV Phase 1 Protocols"), which further recognizes the physical damage to

property to businesses, including the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas and businesses within one (1) mile of those restaurants.

41. Similarly, on May 8, 2020, the State of Nevada issued a *Roadmap to Recover for Nevada* (5/8/20 Phase 1 Mandates) with industry-specific mandates for restaurants, among other businesses.

42. The 5/8/20 Phase 1 Mandates further require certain businesses, including restaurants and business within one (1) mile of the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas, to undertake significant remediation measures in response to the actual, or presumed, physical damage being caused to their properties.

43. On May 8, 2020, NV OSHA also issued additional certain mandates ("5/8/20 NV OSHA Mandates") which recognizes or presupposes the actual physical damage to property to businesses, including the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas and businesses within one (1) mile of those restaurants.

44. Thus, the 5/8/20 NV OSHA Mandates require certain businesses, including restaurants and business within one (1) mile of the *Wahoo's Fish Taco* restaurants operated by Wahoo's Las Vegas, to undertake significant remediation measures in response to the actual, or presumed, physical damage being caused to their properties.

45. May 11, 2020, Nevada Governor Sisolak issued a State of Fiscal Emergency resulting from the closure and restrictions of Nevada businesses, like Wahoo's Las Vegas, which further manifest considerable financial losses caused by physical damage to, and loss of use, of property, like the properties of Wahoo's Las Vegas covered by the Policies.

46. Among other things, the various governmental Directives, Orders, Regulations and Mandates issued in response to COVID-19 circumstances, including those alleged here, require businesses, like the restaurants operated by Wahoo's Las Vegas, and insured by Defendants, engage in periodic remediation efforts, which necessarily acknowledges or presupposes  physical, damage suffered by restaurant properties.

47. The various governmental Directives, Orders and Mandates issued in response to

COVID-19 circumstances, including those alleged here, are occurrences of "Civil Authority" per the Policy.

48. Alternatively, the various governmental Directives, Orders, Regulations and Mandates issued in response to COVID-19 circumstances, including those alleged here, presuppose that Wahoo's Las Vegas' covered premises are "too dangerous" to use and patronize, and thus, such Directives, Orders, Regulations and Mandates themselves satisfy the physical loss of or use of the property under the Policy's *Business Interruption* coverage, irrespective of whether alternative coverage maybe available under *Civil Authority* coverage of the Policy.

49. On or about March 20, 2020, Wahoo's Las Vegas made a claim on the Policy with Defendants.

50. Wahoo's Las Vegas provided Defendants all necessary information.

51. Defendants did not request from Wahoo's Las Vegas any additional information, or otherwise advise Wahoo's Las Vegas that the information provided by Wahoo's Las Vegas was somehow insufficient for Defendants to investigate and consider the claim.

52. Wahoo's Las Vegas insurance claim was valid and covered by the Policy and/or Umbrella.

53. Defendants breached the Policy and Umbrella.

54. Just nine business days later, Defendants swiftly denied Wahoo's Las Vegas' claim.

55. In the April 2, 2020, denial letter, AmTrust advised Wahoo's Las Vegas that Defendants had concluded its investigation and consideration, and that Defendants were denying Wahoo's Las Vegas' claim solely because Wahoo's Las Vegas' covered business properties did not sustain direct physical damage. The denial letter succinctly sets forth the ground for denial as follows:

> "Because your Covered Property did not sustain direct physical damage from a Covered Cause of Loss, coverage has not been triggered for a business interruption claim. As such, regretfully we have denied the claim and closed the claim without payment."

56. Defendants' April 2, 2020, denial letter did not provide any other grounds for denial of coverage

57. In breach of contract and in bad faith, Defendants did not investigate, or ignored, the various circumstances in which the Policy and/or Umbrella provided insurance coverage for Wahoo's Las Vegas from the facts and occurrences alleged herein.

58. Defendants' denial was also based on a misrepresentation of the actual language of the Policy, including misrepresentations in the following respects:

- Policy Form CP 00 30 10 12 for business interruption in paragraph 5 provides "Additional Coverage" "Civil Authority";

- The coverage provisions for "Civil Authority" makes no mention of a requirement for "direct physical damage":

- The "Civil Authority" coverage only references "Covered Cause of Loss"

- The Business Income Endorsement states "Covered Cause of Loss" is as appears in the Declarations.

- There is no mention of the "Covered Cause of Loss" for Civil Authority Coverage in the Declarations

- Defendants omitted to disclose to Wahoo's Las Vegas that the *Business Income* coverage (CP 00 30 10 12) was also triggered by loss of use of their covered premises, which manifestly occurred here, but instead, Defendants misrepresented to Wahoo's Las Vegas that *Business Income* coverage only applied when physical damage (which also occurred here).

59. Moreover, Defendants' purported requirement of "direct physical damage" is nowhere found in the Additional Coverage for Civil Authority liability for loss of business income. Moreover the term used in the Civil Authority Coverage refers to "Covered Cause of Loss" which is required be called out by this coverage in the Declarations.  Since the Declarations are silent on this additional coverage, a patent ambiguity is present, requiring a finding of coverage. While the clause "damage of property" which is used in the Civil Authority

Additional Coverage Endorsement is not defined, in at least one hundred thirty (130) other provisions of the policy, "property damage" is defined as including loss of use of property.

60. As the drafters of the Policy, Defendants knew or should have known the actual language of the Policy provides Civil Authority coverage or business interruption loss coverage due to the loss of use of Wahoo's Las Vegas' properties because other properties within one mile of Wahoo's properties were closed, as well.

61. As the drafters of the Policy and superior parties, Defendants also knew that the applicable, well established, contract law requires that all words of a contract are to be read and given meaning; and that they could not read the Policy to ignore loss of use of property, or as requiring direct physical damage for the Additional Coverage for *Civil Authority* or *Business Income*, when it failed to define the Covered Cause of Loss for such coverage in its Declarations as required by the Policy.

62. Defendants also failed to investigate and consider the existence of physical damage or loss in the context of the current COVID-19 pandemic, including, without limitation, that social anxiety about the COVID-19 pandemic has caused customers to avoid crowds and public spaces, like the circumstances found at Wahoo's Las Vegas restaurants, regardless of whether the coronavirus is present at such premises.

63. Defendants also failed to investigate and consider the existence of physical damage or loss in the context of various COVID-19 quarantine, shelter-in-place and lockdown orders issued by state and local authorities.

64. It is also generally known that the current COVID-19 circumstances have fostered public health and safety anxiety, including concerns about public gatherings in restaurants and other businesses, which has resulted in negative, general perceptions about the conditions of restaurants and other businesses, even in the absence of the various governmental Directives, Orders, Regulations and Mandates issued in response to COVID-19 circumstances or any confirmed exposure to COVID-19 in such premises.

65. Such public perceptions include, without limitation, perceptions that Wahoo's Las

Vegas' restaurants and other businesses are damaged or hazardous to patronize, again, even in the absence of any confirmed exposure to COVID-19 in any one restaurant.

66. Such negative public perceptions have caused substantial physical loss to Wahoo's Las Vegas' and use of its insured restaurants and resulted in reduced operations and loss of income.

67. Thus, Wahoo's Las Vegas alleges in the alternative that it has suffered "physical loss or damage" as singly or in tandem:

a. The pandemic in general, not any particular proved contamination at any of Wahoo's Las Vegas; insured premises, caused, and continues to cause wide-spread community concern that diminished insured operations and thus caused loss of use as a matter of law that implicated the business interruption coverage under the policy; and

b. The pandemic in general along with the Governor's Executive Orders worked to cause the business interruptions claimed in this action, thus implicating the business interruption provisions in the policy.

68. In the alternative, *Civil Authority* additional coverage under the subject policy was implicated because the term "access to the premises" includes the inability to "use" the premises for its intended economic purpose. This, in turn, gives the civil authorities control over the premises amounting to unimpeded access thereto.

69. The purpose of business interruption or business income coverage, like Wahoo's Las Vegas' Policy, is to cover the inability to pursue income derived from the use of the covered premises. That is precisely what has happened here.

70. In sum, Defendants' denial of coverage was a breach of contract and violated common law duties of good faith and fair dealing and provision of the Nevada Unfair Claims Practices Act, as further alleged herein.

## JURISDICTION AND VENUE

71. This Court possesses subject matter jurisdiction over this matter in respect to Defendants.

72. Venue is proper in Clark County, Nevada because this is the judicial district in which the Policies were issued to Wahoo's Las Vegas, a Nevada resident and insured.

73. Defendants are subject to personal jurisdiction in Nevada because they conduct significant business in Nevada; are registered to do business in Nevada or licensed with the Nevada Department of Insurance; and Clark County, Nevada is also the location where a substantial part of the events or omissions giving rise to the claims set forth herein occurred and where a substantial part of the losses underlying Wahoo's Las Vegas' insurance claim occurred.

74. Defendants are also subject to jurisdiction in Nevada because they committed tortious acts within this State aimed at Wahoo's Las Vegas, a Nevada resident.

## CLAIMS

### I.
### First Claim for Relief
### (DECLARATORY RELIEF)

75. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

76. Justicable controversies exists between the parties as alleged herein.

77. Such issues or controversies are ripe for judicial determination.

78. Wahoo's Las Vegas seeks a declaration of the parties rights and obligations under the Policy and Umbrella, as alleged herein.

79. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

### II.
### Second Claim for Relief
### (BREACH OF CONTRACT)

80. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

81. The Policy and Umbrella are valid and enforceable contracts.

82. Wahoo's Las Vegas paid the significant premiums for the Policy and Umbrella and has performed thereunder.

83. Defendants breached the Policy and Umbrella as alleged herein.

84. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of Defendants' breach.

85. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

### III.
### Third Claim for Relief
### (DECLARATORY RELIEF - INAPPLICABILITY OF CLAIMS OF EXCLUSION)

86. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

87. Wahoo's Las Vegas seeks a declaration from the Court that the virus or bacteria exclusion under the Policy at CP 01 40 07 06 are not applicable, not enforceable or do not preclude coverage under the circumstances alleged here.

88. Wahoo's Las Vegas asserts four, independent grounds that the virus or bacteria exclusion (at CP 01 40 07 06) not applicable, not enforceable or do not preclude coverage under the circumstances alleged here:

    A). Defendants have waived the exclusion by virtue of failing to investigate and failing to assert the exclusion as grounds for the denial of the claim;

    B). The exclusion is inapplicable because the virus was not the efficient proximate cause of the loss to Wahoo's Las Vegas;

    C). There is no language in the Policy that indicates that a loss caused by a combination of a covered and excluded causes of losses will not be covered;

    D). The exclusion is in conflict with other policy provisions and as strictly construed against the insurer is inapplicable; Or

    E). There claims for coverage at issue here are not personal injury claims for physical distress, illness or disease.

89. Defendants through their failure to fully investigate all claims for coverage and limiting is claim for denial based solely on it claim there was no "direct physical damage" waived any claims for exclusion or limitation of coverage.

90. Under governing Nevada case law, the failure to fully investigate a claim and a denial based on an erroneous assertion of non-coverage waives any subsequent claim of an otherwise valid exclusion. *See e.g., Vitale v. Jefferson Ins. Co.*, 116 Nev. 590, 5 P.3d 1054, 1059 (Nev. 2000).

91. Under governing Nevada law, any exclusion must be the "efficient proximate cause" of the loss. *Fourth Street Place LLC v. Travelers Indem. Co.* 127 Nev. 957, 270 P.3d 1235 (2012). The language of the Virus or Bacteria Exclusion, states: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The "efficient proximate cause of Wahoo's Las Vegas' losses were and are the emergency orders of Nevada's governor under the Civil Authority coverage, not actual loss or damage caused by the virus itself on Wahoo's Las Vegas' five covered premises.

92. The exclusion irreconcilably conflicts with extended coverage under the policy for business interruption losses due to "fungus and bacteria". The Virus or Bacteria exclusion itself states: "However, this exclusion does not apply to loss or damage caused by or resulting from 'fungus', wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy" However, in Policy Endorsement CP 10 30 09 17 "Causes of Loss— Special Form" coverage for both "fungus" and "bacteria" are extended including coverage for business interruption under "E.    Additional Coverage – Limited Coverage For 'Fungus', Wet Rot, Dry Rot And Bacteria." This coverage includes coverage for Business Income or Expense. By stating the bacteria, (undefined in the policy) is excluded in the Virus and Bacteria Exclusion, and then covering bacteria in the "Causes of Loss—Special Form endorsement renders unenforceable the entire CP 01 40 0706 Exclusion for Loss due to Virus or Bacteria.

93. The language of the Virus or Bacteria Exclusion -- "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" -- is further irrelevant to the instant coverage claims because, by its terms, the exclusion only precludes third-party claims against the

insured for bodily injury. Even if this exclusion is ambiguous on this score, it must be construed against its application here.

## IV.
### Fourth Claim for Relief
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING)

94. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

95. The Policy and Umbrella are valid and enforceable contracts.

96. Per Nevada law, the Policy and Umbrella contain an implied covenant to act in good faith in performance and enforcement of the contract.

97. Wahoo's Las Vegas had justifiable expectations to receive certain benefits consistent with the spirit of the Policy and/or Umbrella.

98. Defendants performed in a manner that was in violation of, or unfaithful to, the spirit of the Policy and/or Umbrella.

99. The justified expectations of Wahoo's Las Vegas were thus denied.

100. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of the breach.

101. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

## V.
### Fifth Claim for Relief
### (TORTIOUS BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING)

102. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

103. The Policy and Umbrella are valid and enforceable contracts.

104. Defendants owned a duty of good faith to Wahoo's Las Vegas arising from the Policy and Umbrella.

105. As alleged above, there was a special element of reliance or fiduciary duty between Defendants and Wahoo's Las Vegas where, *inter alia,* Defendants were in a superior or

entrusted position, had superior knowledge and were akin to fiduciaries.

106. Moreover, under Nevada law, the relationship of an insured to an insurer is one of special confidence which imposes fiduciary-like duties upon insurers like Defendants.

107. Defendants breached such duties of good faith by engaging in misconduct as alleged herein.

108. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of the breaches.

109. Wahoo's Las Vegas is entitled to exemplary and punitive damages for the sake of example and by way of punishing Defendants.

110. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

## VI.
### Sixth Claim for Relief
### (MISREPRESENTATION)

111. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

112. As alleged above, Defendants misrepresented the language of the Policy to Wahoo's Las Vegas in wrongfully denying its claim.

113. As alleged above, Defendants had an obligation or duty to disclose the full and accurate language of the Policy to Wahoo's Las Vegas.

114. To the extent necessary, Wahoo's Las Vegas alleges that a relaxed pleading standard is appropriate under *Rocker v. KPMG, LLP*, 122 Nev. 1185, 148 P.3d 703 (2006), because other material facts are particularly withing the knowledge Defendants and Wahoo's Las Vegas should be allowed time to conduct necessary discovery.

115. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of Defendants' misrepresentations.

116. Wahoo's Las Vegas is entitled to exemplary and punitive damages for the sake of example and by way of punishing Defendants.

117. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

# VII.
## Seventh Claim for Relief
**(VIOLATION OF NRS 686A.310)**

118. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

119. It is an improper and unfair claims practice for an insurer transacting business in Nevada to engage in certain activities in violation of NRS 686A.310, also known as the Nevada Unfair Claims Practices Act (the "Act").

120. Defendants violated the Act by, among other things: misrepresenting to Wahoo's Las Vegas pertinent facts or insurance policy provisions relating to any coverage at issue, as alleged herein; failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies; and failing to effectuate prompt, fair and equitable settlements of claims in which its liability has become reasonably clear.

121. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of Defendants' violations of the Act.

122. Wahoo's Las Vegas is entitled to exemplary and punitive damages for the sake of example and by way of punishing Defendants.

123. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

# VIII.
## Eighth Claim for Relief
**(BAD FAITH INSURANCE)**

124. Wahoo's Las Vegas realleges and incorporates by reference all foregoing Paragraphs as though fully stated here.

125. Defendants refused and denied the insurance claim by Wahoo's Las Vegas without proper cause.

126. The insurance claim by Wahoo's Las Vegas is for a loss covered by the Policy and/or Umbrella.

127. Wahoo's Las Vegas was damaged in excess of $100,000 as the result of

Defendants' violations of the Act.

128. The actions of Defendants were and continue to be oppressive, reckless and undertaken in conscious disregard of the rights and interests of Wahoo's Las Vegas.

129. Wahoo's Las Vegas is entitled to exemplary and punitive damages for the sake of example and by way of punishing Defendants.

130. Wahoo's Las Vegas is entitled to its reasonable attorneys' fees and costs.

**WHEREFORE**, Wahoo's Las Vegas prays for the following relief:

1. For the damages alleged herein, precise sums to be determined at trial;
2. For the declaratory relief requested;
3. For punitive and exemplary damages to be determined at trial;
4. For an award of reasonable attorneys' fees and costs; and
5. For any other legal or equitable relief the Court or Jury may deed proper.

Dated: August 17, 2020

**KENNEDY & COUVILLIER, PLLC**

/s/Maximiliano D. Couvillier III
Todd E. Kennedy, Esq. (Bar #6014)
Maximiliano D. Couvillier III, Esq. (Bar #7661) 3271 E. Warm Springs Rd.
Las Vegas, NV 89120
Tel: (702) 605-3440
Fax: (702) 625-6367
tkennedy@kclawnv.com
mcouvillier@kclawnv.com

A.William Maupin, Esq. (Bar #1315)
13345 Goldpan Dr., Suite 112
Reno, NV 89511
Tel: (702) 682-5476
raisuli1@aol.com

*Attorneys for Plaintiffs*