UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WFTLVO1, LLC, et al., | Case No. 2:20-CV-1845 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| AMTRUST NORTH AMERICA, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendant Security National Insurance Company's ("defendant") motion to dismiss. (ECF No. 49). Plaintiff WFTLV01, LLC ("plaintiff") filed a response in opposition (ECF No. 56), to which defendant replied. (ECF No. 57).

**I.    Background**

This case involves an insurance coverage dispute relating to the COVID-19 virus measures implemented by Nevada governor Steve Sisolak in 2020. Plaintiff owns and operates five Wahoo's Fish Taco restaurants in the Las Vegas area. (ECF No. 1-2). These restaurants offer gaming and full bar services. (*Id.*)

On March 12, 2020, Governor Sisolak declared a "State of Emergency" due to COVID-19 and mandated the closure of all gaming operations on or about March 18, 2020, and the closure of bar operations on or about March 20, 2020. (*Id.*). As a result of these emergency directives, plaintiff closed its restaurants on March 17, 2020. (ECF No. 56 at 3). At that time, plaintiff had a commercial property insurance policy issued by defendant (the "policy"). Plaintiff alleges that it lost income because of the state's emergency measures, and on or about March 20, 2020, it filed a claim for business income and civil authority coverage under the policy (the "claim"). On or about April 2, 2020, defendant denied that claim because plaintiff's

**James C. Mahan**
**U.S. District Judge**

loss of income was not attributable to any "direct physical loss of or damage to property" within the meaning of the policy, and that the policy includes an endorsement titled "Exclusion of Loss Due to Virus or Bacteria" (the "virus exclusion").  (ECF Nos. 49-3, 57-9).

Plaintiff then filed the instant suit arguing that denial of its claim was improper.  Plaintiff asserts eight claims for relief: (1) declaratory relief; (2) breach of contract; (3) declaratory relief – inapplicability of claims of exclusion; (4) breach of the implied covenant of good faith and fair dealing; (5) tortious breach of implied covenant of good faith and fair dealing; (6) misrepresentation; (7) violation of NRS 686A.310; and (8) bad faith insurance.  (ECF No. 1-2).  Defendant now moves to dismiss plaintiff's claims in full under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 49).

**II.    Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

**James C. Mahan**
**U.S. District Judge**

- 2 -

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.    Discussion**

A.   Breach of Contract and Declaratory Relief

Defendant asserts there is no coverage under the policy for the losses alleged in the claim, thus dooming plaintiff's claims for breach of contract and declaratory relief. In Nevada, "[t]he

James C. Mahan
U.S. District Judge

- 3 -

starting point for the interpretation of any contract, including insurance policies, is with its plain language." *WP6 Rest. Mgmt. Grp. LLC v. Zurich Am. Ins. Co.*, No. 2:20-CV-1506-KJD-NJK, 2022 WL 980248, at *7 (D. Nev. Mar. 31, 2022). An insurance policy "is enforced according to its terms to effectuate the parties' intent," viewing its provisions "in their plain, ordinary[,] and popular sense." *Levy Ad Grp., Inc. v. Chubb Corp.*, 519 F. Supp. 3d 832, 836 (D. Nev. 2021), *aff'd sub nom. Levy Ad Grp., Inc. v. Fed. Ins. Co.*, No. 21-15413, 2022 WL 816927, at *1 (9th Cir. Mar. 17, 2022) (citing *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303 (1993)).

Any limitation in policy coverage must "clearly and distinctly communicate[ ] to the insured the nature of the limitation." *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1274 (D. Nev. 2021), *aff'd*, No. 21-15367, 2022 WL 1125663 (9th Cir. Apr. 15, 2022) (citing *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1382 (1984) "To determine whether a term is ambiguous, it should not be viewed standing alone, but rather in conjunction with the policy as a whole 'in order to give a reasonable and harmonious meaning and effect to all its provisions.'" *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (2011). Ultimately, the interpretation of an insurance policy is a question of law for the court. *Levy,* 519 F. Supp. 3d at 836.

   *i.* Business Income and Extended Business Income Coverage

Under the policy, coverage for business income and extended business income is limited to loss or damage to property caused by "direct physical loss." (ECF No. 49 at 6). While the terms "loss"; "physical"; "damage"; and "property" are undefined, plaintiff argues that the deprivation of use of its property incurred by closing its restaurants falls within a reasonable interpretation of the policy language. In so claiming, plaintiff relies on non-binding cases that have construed the meaning of "physical loss" to capture intangible losses, such as "a deprivation of the use of [a] business premises." *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457, 462–64 (N.D. Ill. 2021); (ECF. No. 56 at 9).

This court has determined that similar policy language requiring "direct physical loss" shall exclude coverage for claims that contain no plausible allegations of demonstrable, physical alteration or change to the condition of a property. *Circus Circus,* 525 F. Supp. 3d at 1269; *Levy*,

**James C. Mahan**
**U.S. District Judge**

- 4 -

519 F. Supp. 3d at 836 (concluding that a policy's business income provisions did not cover economic losses incurred by COVID-19 closures because the policy required physical losses or damage to premises). Here, plaintiff fails to allege any plausible physical loss or damage that might trigger the policy's business income or extended business income coverage. Rather, plaintiff unsuccessfully attempts to establish physical loss from the deprivation of use of its tables, seating, gaming machines, and bars, for their intended purpose. (ECF No. 9).

    ii. *Civil Authority Coverage.*

Nor is plaintiff's claim entitled to the policy's civil authority coverage. To receive civil authority coverage under the policy, plaintiff must allege that a civil authority's prohibition of access to plaintiff's business was the direct result of "direct physical loss" or damage to property near the business. (ECF No. 49-11). Not only does plaintiff fail to allege any direct physical loss, but it attempts to separate civil authority coverage from business income coverage and argues that the civil authority coverage is ambiguous because the "declarations of [the] policy are silent on this additional Civil Authority coverage." (ECF No. 56-14).

Civil authority coverage is a subset of business income coverage. It is listed as a provision of "additional coverages" for loss of business income coverage. (ECF No. 51-1 at 208-209). Thus, the language of the civil authority coverage must be interpreted the same way as the language of business income coverage itself.

Moreover, plaintiff asserts the civil authority coverage conflicts with other policy provision that relate to loss or damages caused by law or ordinances. Plaintiff argues these conflicts result in ambiguities that must be interpreted broadly to provide coverage for the claim. In so claiming, plaintiff points to: (1) Section B.1.a of the "Causes of Loss- Special Form," which excludes coverage for loss or damages caused by an ordinance or law (ECF No. 51-1 at 232); (2) Section n(1)(a) of the Section I – "Expanded Property Coverage Form," which amends the building and personal property coverage form to include coverage for loss or damage caused by law or ordinances (*Id.* at 91); and (3) the civil authority provision (*Id.* at 209).

Plaintiff's efforts are unpersuasive. Section B.1.a excludes coverage for loss or damage caused by an ordinance or law, however the potential coverage under the civil authority

**James C. Mahan**
**U.S. District Judge**

- 5 -

provision must be caused by a "covered cause of loss." *See id.* The policy defines "covered cause of loss" to mean "direct physical loss." (*Id.* at 232). Thus, the law or ordinance exclusion does not exclude civil authority coverage. Next, section n(1)(a) is inapplicable because it extends coverage for the building and personal property coverage form, not the business income coverage form that is at issue here. (*Id.* at 87, 91).

Lastly, plaintiff argues that the terms "civil authority"; "law"; and "ordinance" are undefined, again resulting in ambiguity of the civil authority coverage. The court finds no such ambiguities. The terms "law" and "ordinance" are not found under the civil authority provision. And, while the term "civil authority" is undefined, viewed in conjunction with the policy, this court finds that the term's nature of limitations was clearly and distinctly communicated to plaintiff. The civil authority provision is about the "action of civil authority that prohibits access" to plaintiff's business. (*Id.* at 209). Civil authority is a broadly written term, and it is unmistakable that the intent of the parties was to capture the variety of institutions that may enforce prohibition of access to plaintiff's business.

   *iii.* *The Virus Exclusion.*

Even if plaintiff had alleged direct physical loss or damage to its property, the policy's virus exclusion precludes coverage of the claim. The virus exclusion provides that the policy will not cover "loss or damage caused by or resulting from any virus, bacterium or other microorganism." (ECF Nos. 49-3). Plaintiff argues it is inapplicable because the virus exclusion: (1) applies to third-party personal injury claims and the claim is a first-party claim; (2) does not expressly state it applies to losses from a pandemic and related government emergency orders; and (3) does not apply to extraneous impacts of a viral or bacterial pandemic. (ECF. 56 at 14-20).

The court rejects plaintiff's first argument because the virus exclusion "applies to all coverage under all forms and endorsements that compromise this" policy. (ECF No. 51-1 at 220). The virus exclusion unambiguously precludes losses caused by or related to a virus. Courts in this district have found that such language "'contemplates situations where a virus indirectly contributes to or worsens a loss,' and the restaurants cannot reasonably deny that the

virus and its spread contributed to their losses." *Project Lion LLC v. Badger Mut. Ins. Co.*, No. 2:20-CV-00768-JAD-VCF, 2021 WL 2389885, at *4 (D. Nev. May 19, 2021) (quoting *Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 522–23 (N.D. Cal. 2020)).

Thus, defendant did not breach its contract as a matter of law. It had no duty to cover the claim under the policy. The terms of the contract are clear and unambiguous. The court dismisses plaintiff's breach of contract claim and further determines that plaintiff is not entitled to a declaratory judgment stating that defendant improperly denied the claim. Accordingly, the court also dismisses both of plaintiff's claims for declaratory relief.

B. Breach of Implied Covenant of Good Faith and Fair Dealing, Bad Faith, and Nevada Unfair Settlement Practices.

Plaintiff also asserts claims for: (1) breach of the implied covenant of good faith and fair dealing; (2) tortious breach of implied covenant of good faith and fair dealing; (4) violation of NRS 686A.310; and (5) bad faith insurance. (ECF No. 1-2). Crucial to these claims is plaintiff's allegation that defendant unreasonably refused to approve plaintiff's claims under the policy.

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *WP6*, 2022 WL 980248, at *7 (citing *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (1998)). "And, while an allegation of a failure to investigate is relevant to a bad faith failure to pay and insurance claim, 'the failure to investigate is not itself bad faith.'" *Id.* (quoting *Hart v. Prudential Property & Casualty Ins. Co.*, 848 F. Supp. 900, 905 (D. Nev. 1994)). Thus, for plaintiff to establish prima facie claim for bad faith refusal to pay an insurance claim, plaintiff must show that defendant had an obligation to pay the insurance claim.

Here, plaintiff seeks coverage for the claim under the policy's business income and civil authority provisions. To potentially implicate coverage under either provision, plaintiff must show a "direct physical loss" or physical property damages. Plaintiff makes no such showing, and instead bases its claim on intangible losses incurred by closing its businesses. Nevertheless, the policy's virus exclusion precludes coverage for loss or damage caused by any virus. Thus,

James C. Mahan
U.S. District Judge

- 7 -

1  plaintiff fails to state a claim for coverage under the policy because defendant had a reasonable
2  basis to deny plaintiff's claim. *Id*. at 7. Accordingly, the court dismisses plaintiff's claims for: (1)
3  breach of the implied covenant of good faith and fair dealing; (2) tortious breach of implied
4  covenant of good faith and fair dealing; (4) violation of NRS 686A.310; and (5) bad faith
5  insurance.

### C. Misrepresentation.

Under Nevada law, to maintain a misrepresentation cause of action, a plaintiff must establish the following by "clear and convincing" evidence: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *See Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1413-1414 (D. Nev. 1995) (citing *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588 (1992)).

Here, plaintiff asserts that defendant misrepresented the language of the policy's business income and civil authority provisions when it denied coverage for the claim. Since the court has determined these provisions are clear and unambiguous, plaintiff's claim for misrepresentation must also fail. The court dismisses plaintiff's claim for misrepresentation.

### D. Leave to Amend

Although "[t]he court should freely give leave when justice so requires," the court is not obligated to do so. Fed. R. Civ. P. 15(a)(2). The court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, "leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)). The standard to be applied when determining the legal sufficiency of a proposed amendment is identical to that on a motion to dismiss for failure to state a claim. *Id.*

**James C. Mahan**
**U.S. District Judge**

Determining that plaintiff's eight claims for relief fail as a matter of law, the court finds that granting plaintiff leave to amend would be futile.  The plain language of the policy prevents plaintiff from successfully bringing an insurance claim, and thus no potential amendment could rescue plaintiff's legal claims.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss (ECF No. 49) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's complaint (ECF No. 1) be, and the same hereby is DISMISSED, with prejudice.

The clerk is instructed to enter judgment and close the case.

DATED October 21, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**